IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

ELIJAH MONDY, JR. INDIVIDUALLY                    PLAINTIFF
AND ON BEHALF OF ALL SIMILARLY
SITUATED CITIZENS OF THE CITY OF
HELENA-WEST HELENA, ARKANSAS

VS.                    CASE NO 2:2017-CV-104-BRW

ADRIAN MESSINA, INDIVIDUALLY AND IN HIS          DEFENDANTS
OFFICIAL CAPACITY AS ALDERMAN FOR THE
CITY OF HELENA-WEST HELENA, ARKANSAS;
JESSE VESCON HOLLOWELL, JR., MAYOR OF
THE CITY HELENA-WEST HELENA, ARKANSAS;
CITY OF HELENA-WEST HELENA, ARKANSAS;
WANDA CROCKETT, EVER J. FORD, JOE ST.
COLUMBIA SR; CHRISTOPHER FRANKLIN, JOHN
HUFF, JR. LARRY J. BROWN; MONICA DAVIS;
DON ETHERLY; VIVIAN HOLDER IN THEIR OFFICIAL
CAPACITIES AS ALDERMEN FOR THE CITY OF HELENA
WEST HELENA, ARKANSAS

## DEFENDANT'S MOTION TO DISMISS AND DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Comes now the City of Helena-West Helena, Arkansas and all Defendants, and for their brief to Motion to Dismiss and brief in support of Motion to Dismiss case doth states:

1. The Defendants move pursuant to Rule 12 (b)(6) to dismiss this action for failure to state a claim upon which relief can be granted.

2. The Defendants are entitled to qualified immunity and operated within the scope of the duties.

3. The Defendants had not violated any of the Plaintiff's rights, privileges, or immunities. The Defendants have not harmed the Plaintiff in any manner.

4. The Plaintiff has filed a cause of action in an attempt to obtain Federal Court Jurisdiction. The Plaintiff has filed this cause of action and make several allegations to attempt to present a federal question and has not stated a cause of action for either of the purported federal causes of action.

## A) THERE IS NO RIGHT TO SUE FOR AMENDMENT AND REPEAL

The Plaintiffs have plead several federal statutes and constitutional provisions in filing this cause of action. Arkansas Constitution provides in Article 5 Section 1, in pertinent part, "No measure approved by a vote of the people shall be amended or repealed by the General Assembly or any council **except** upon a yea and nay vote on roll call of two-thirds of all of the members of each house of the General Assembly or of the city council as the case may be." (Emphasis Added).

The Plaintiffs have brought this cause of action large measure regarding the City Council's decision to vote to repeal the initiated ordinance. The Arkansas Constitution clearly authorizes the City Council to repeal and/or amendment any initiative or referendum. Where the Legislature has not permitted through the legislation at issue, a private right to sue, a person may not sue under such a statute. *See e.g. Columbia Mutual Ins. Co. v. Home Mutual Fire Ins. Co.*, 74 Ark. App. 166, 174, 47 S.W.3d 909 (2001). While this concept does not appear to have been addressed at great length in our state courts, the federal courts have a large body of law on the issue. If the Court were to accept the Plaintiff's allegations as true. "'[T]he fact that a

federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'" *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002) (internal citation omitted). In *Gonzaga,* the Court held that "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." 536 U.S. at 286. The Court also said: "We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.

The Defendants do not admit any violation of any statute nor any alleged violation of rights, privileges, or immunities secured by the Constitution and laws" of the United States. There has been no violation of any State statute, Federal Statute, State Constitutional provision or United States Constitution provision. The graven of this suit is regarding the City Council voting to repeal the purported ordinance and whether the ordinance repealing the initiated ordinance was properly published.

It is well settled that when a municipality acts in a legislative capacity, it exercises a power conferred upon it by the General Assembly. *See, e.g.*, *City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 336, 916 S.W.2d 95, 97 (1996). The Supreme Court has also clearly held that when city councils exercise their legislative power, courts will review their decisions only to determine if they are arbitrary, capricious, or unreasonable. *See, e.g.*, *id*. at 336–37, 916 S.W.2d at 97.

In *Camden Comm. Dev. Corp. v. Sutton*, 339 Ark. 368, 5 S.W.3d 439 (1999), the

Court began its analysis by framing the issue as "whether the actions taken by the Commission and the City Board were legislative or administrative." *Camden*, 339 Ark. at 372, 5 S.W.3d at 442. The court then summarized the test for determining the difference between legislative and administrative acts:

Both legislative and executive powers are possessed by municipal corporations . . . . The crucial test for determining what is legislative and what is administrative is whether the ordinance is ***one making a new law, or one executing a law already in existence*** . . . . Executive powers are often vested in the council or legislative body and exercised by motion, resolution or ordinance. Executive action evidenced by ordinance or resolution is not subject to the power of the referendum, which is restricted to legislative action as distinguished from mere administrative action. The form or name does not change the essential nature of the real step taken. 339 Ark. at 373, 5 S.W.3d at 442 (quoting *Scroggins v.Kerr*, 217 Ark. 137, 228 S.W.2d 995 (1950)).(emphasis added). In *Scroggins,* the Court stated that it is well settled that in some of their functioning, city councils in this state act quasi-judicially. *Williams v. Dent,* 207 Ark. 440, 181 S. W. 2d 29 ; *Martin v. Cogbill, Comr.,* 214 Ark. 818, 218 S. W. 2d 94 . . . city councils often enact resolutions and ordinances that are administrative or executive in character. This fact is recognized in *Chastain v. City of Little Rock,* 208 Ark. 142, 185 S. W. 2d 95. Contextually, the Court was addressing the issue of whether the actions of a city council may be subject to a referendum of the people.  The Court found that when making new legislation, the City Council is acting legislatively and that new legislation can be subject to a referendum; when it the

City Council is acting on a law that is already in existence, it is acting in an administrative manner.

The distinction between legislative actions and administrative actions by a city council is worthy of note because of the decision of the Arkansas Supreme Court in _Ingram v. City of Pine Bluff,_ 355 Ark. 129, 133 S.W.3d 382 (2003), which also involved a city action razing a structure, albeit in that case the city acted by resolution. In _Ingram,_ the city's action was held to be administrative. In _City of Lowell v.M & N Mobile Home Park, Inc._, 323 Ark. 332, 916 S.W.2d 95 (1996), the Supreme Court stated:

> The General Assembly can delegate the legislative power to enact ordinances to municipal corporations. We have written that when a municipality acts in a legislative capacity, it exercises a power conferred upon it by the General Assembly, and consequently, an act of a municipality is the co-equal of an act of the General Assembly. .
>
> The legislative power includes discretion to determine the interests of the public as well as the means necessary to protect those interests. Within constitutional limits, the legislative branch is the sole judge of the laws that should be enacted for the protection and welfare of the people and when and how the police power of the State is to be exercised . . . .
>
> . . . The legislative branch has discretion to determine the interests of the public, but the judicial branch has the power to set aside legislation that is _arbitrary, capricious, or unreasonable_. This is a limited power, and the judiciary, in acting under this limited power, cannot take away the discretion that is constitutionally vested in a city's legislative body.323 Ark. at 336–37, 916 S.W.2d at 97 (emphasis supplied, internal citations omitted).

*City of Lowell* gives further guidance by defining "arbitrary" as "decisive but unreasoned action" and "capricious" as "not guided by steady judgment or purpose." *Id.* at 339, 916 S.W.2d at 9 8–99. Furthermore, an enactment is not arbitrary if there was ***any reasonable basis*** for its enactment. *Id. (Emphasis Added).* The trial court must engage in a presumption that the legislation is valid, and the burden is placed on the moving party to prove that the enactment was unreasonable or arbitrary. *See id.*

The action taken by the City Council was legislative in nature and authorized specifically by the Arkansas Constitution. The Plaintiff does not have a cause of action regarding any federal question claims alleged in the Complaint. To the extent there lies a cause action, the Plaintiff must show that the Defendants were arbitrary and capricious and without any reasonable basis for the enactment.

The Plaintiffs cause of action erroneously relies on the City Council voting to repeal the initiated ordinance as a basis for the all Defendants to have violated the United States Constitution, Arkansas Civil Rights Act, the Voting Rights Act, and 42 U.S.C. Section 1983. The Plaintiff's complaint states, in pertinent part,

34. The city council convened on December 6, 2016 for what may have been an illegal meeting. At that meeting, the city council voted favorably on a "motion to repeal the vote" of the people of Helena-West Helena Arkansas. The city council voted for this motion 10-0. The council, at some point after December 6, 2016, figured out that a new ordinance was required in order to repeal an ordinance and their actions on December 6, 2016 were embarrassingly insufficient to strip the people of their voice.

35. The city council convened again for another potentially illegal meeting on December 20, 2016. At that meeting, the city council had an ordinance on the agenda to repeal

Initiated Ordinance 1-2016. The mayor and the city council allowed Rev. William Gant to pray at the beginning of the meeting. The council later allowed the same Rev. William Gant to speak in opposition to the Initiated Ordinance 1-2016, which had already been voted into law by the citizens, and in favor of the ordinance (37-2016) to repeal the Initiated Ordinance. The council refused to permit Mr. James F. Valley to speak on the same issue and later said, "we didn't know what he would say" or something to that effect.

36. The city council voted 9-0 to place the "repeal" ordinance on its third and final reading, reading the title only. Then the city council voted 8-1 to pass the ordinance to repeal Initiated Ordinance 1-2016. Then the city council voted 8-1 to pass a bogus emergency clause to purportedly put the repeal ordinance into effect immediately and thereby evade compliance with the ordinance passed by the people of the Helena-West Helena, Arkansas. In ten minutes ten people had trampled upon the rights of more than 10,000 or so residents of the city. ***See Minutes of December 6 and 20, 2016 Meetings attached as Exhibits 2 and 3.***

39.    The petitioners/plaintiffs have a first amendment right to petition government for the redress of their concerns. The people exercised that right and the city council has attempted to take that right away from them. The City Council has acted to violate the rights of the people to equal protection of the law.

The Plaintiff states that his and those who may be similarly situated rights were taken away from him by the City Council in violation of the equal protection. Amendment 7 to the Arkansas Constitution is clear that the City Council has a right to amend and/or repeal any measure by two-thirds vote. There is no constitution right that has been violated.

The specific language falls under the General Provisions and states in a section that is entitled Amendment and Repeal "No measure approved by a vote of the people shall be amended or repealed by the General Assembly or by **any city council**, **except** upon a yea and any roll call of **two-thirds of all members** elected to each house of the General Assembly, or of the **City Council**, as the case may be. (Emphasis added).

The City Council did conduct a roll call to repeal the ordinance and there was a vote of 10-0 to repeal the purported ordinance. The City Council later voted again to repeal the ordinance by a 8-1 vote. The City Council has twice achieved a two-third roll call of all of the members of the City Council.

Futhermore, the Plaintiff alleges a non-discriminatory reason for the City Council actions. While the Defendants do not agree with Plaintiff, the Plaintiff state in Paragraph 42 of the Complaint:

> 42. That the court should and must direct compliance with the Initiated Ordinance 1-2016, as the council has shown its hand with regard to banishing the ordinance. The city council acted selfishly to protect their jobs which require about four (4) hours of work per month at a pay rate of nearly $175.00 per hour. The city council meets twice monthly for about two (2) hours per meeting or four hours per month. The city council is paid $8,400.00 per year as salary. At that rate, the city council is paid just over $323.00 per meeting. The city council members may also be receiving other lawful benefits as well.

The Plaintiff alleges that the City Council acted selfishly to protect their jobs. Again, the Defendants disagree with the allegation, but, assuming, arguendo, that the Plaintiff's allegations are true, the Plaintiff has not articulated a viable claim under 42 U.S.C Section

1983, the Arkansas Civil Rights Acts, the Voting Rights Act, the United States Constitution nor any of the amendments to the United States Constitution that the Plaintiff alleges to have been violated during this process.  Even if there were conduct that was cognizable under either of those provisions, the Defendants are entitled to absolute immunity and/or qualified immunity.

### B) <u>ABSOLUTE IMMUNITY AND QUALIFIED IMMUNITY</u>

In filing its answers all defendants raised the issue of qualified immunity and absolute immunity. Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). It entitles an individual to not be subject to trial or the other burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial."*Id.* Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings. *O'Neil v. City of Iowa City,* 496 F.3d 915, 917 (8th Cir.2007) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Schatz Family ex rel.  Schatz v. Gierer,* 346 F.3d 1157, 1160(8th Cir.2003)). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73  L.Ed.2d 396 (1982); *Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 580 (8th Cir.2006). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Davis v. Hall,* 375 F.3d 703, 712 (8th Cir.2004).

"The purpose of qualified immunity is to allow public officers to carry out their duties as they think right, rather than acting out of fear for their own personal fortunes." *Martin v.*

_Hallum_, 2010 Ark. App. 193. "Qualified immunity is warranted unless a reasonable officer would understand that the _action taken_ violates the right alleged to have been transgressed. _Sellers v. Baer_, 28 F.3d 895, 899 (8th Cir. 1994), _cert. denied_, 513 U.S. 1084 (1995); _see generally_ _Smith v. Brt_, 363 Ark. 126, 130-31, 211 S.W.3d 485, 489 (2005); _Martin v. Hallum_, 2010 Ark. App. 193. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." _Anderson_, 483 U.S. at 640; _Latimore v. Widseth_, 7 F.3d 709, 712 (8th Cir. 1993) (en banc), _cert. denied_, 510 U.S. 1140 (1994).  " Qualified immunity shields a government official from liability when his conduct does not violate ' clearly established statutory or constitutional rights of which a reasonable person would have known.' " _Krout v. Goemmer,_ **583 F.3d 557**, 564 (8th Cir.2009) (quoting _Harlow v. Fitzgerald,_ **457 U.S. 800**, 818, **102 S.Ct. 2727**, 73 L.Ed.2d 396 (1982)). In assessing whether rights are " clearly established," we must define the rights at issue with sufficient precision to capture the material circumstances of a case. _See Williams v. Jackson,_ **600 F.3d 1007**, 1014 (8th Cir.2010).

Analyzing a claim of qualified immunity requires a two-step inquiry. _Jones,_ 675 F.3d at 1161. In one step, the deciding court determines whether the facts demonstrate a deprivation of a constitutional right. _Id._ (citing _Parrish v. Ball,_ 594 F.3d 993, 1001 (8th Cir.2010)). In the other, the court determines whether the implicated right was clearly established at the time of the deprivation. _Id._ (citing _Parrish,_ 594 F.3d at 1001).    All Defendants are immune from any of the alleged causes of action that have been pled by the Plaintiff and anyone who may in a potential similar situated class.


## C) RULE 65 TEMPORARY RESTRAINING ORDER

The Plaintiff has sought a temporary restraining order that was denied by the court pending the Answer of all Defendants. The Declaratory Judgment and Writ of Mandamus are creatures of the Arkansas Legislature and are plead before the Court through ancillary and pendent jurisdiction.  The Defendants aver that that those matters should be dismissed as well.

**Rule 65. Injunctions and temporary restraining orders**

**(a) Preliminary Injunction.**
**(1) Notice.** The court may issue a preliminary injunction only on notice to the adverse party.

(2) Consolidating the Hearing with the Trial on the Merits. Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial.
**(b) Temporary Restraining Order.**

**(1) Issuing Without Notice.** The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney *only if*:

*(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and*

*(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required*.

**(2) Contents; Expiration.** *Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry-not to exceed 14 days-that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.*

**(3) Expediting the Preliminary-Injunction Hearing.** If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest

possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

**(4) Motion to Dissolve.** On 2 days' notice to the party who obtained the order without notice-or on shorter notice set by the court-the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

**(c) Security.** The court may issue a preliminary injunction or a temporary restraining *order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. Neither the State of Arkansas, its officers, nor its agencies are required to give security.*

**(d) Contents and Scope of Every Injunction and Restraining Order.**

**(1) Contents.** *Every order granting an injunction and every restraining order must:*

*(A) state the reasons why it issued;*

*(B) state its terms specifically; and*

*(C) describe in reasonable detail-and not by referring to the complaint or other document-the act or acts restrained or required.*

**(2) Persons Bound.** The order binds only the following who receive actual notice of it by personal service or otherwise:

(A) the parties;

(B) the parties' officers, agents, servants, employees, and attorneys; and

(C) other persons who are in active concert or participation with the parties and the parties' officers, agents, servants, employees, and attorneys.

The Plaintiff has petitioned this Court, through pendant jurisdiction, for a temporary "The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief." *Wilson v. Pulaski Ass'n of Classroom Teachers,* **330 Ark. 298**, 302, **954 S.W.2d 221**, 224 (1997). The issuance of a temporary restraining order is a matter addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal unless it is clearly erroneous. *Custom Microsystems, Inc. v. Blake,* **344 Ark. 536**, **42 S.W.3d 453** (2001). In determining whether to issue a preliminary injunction or temporary restraining order pursuant to Rule 65, the trial court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Id.* " Of course, in order to justify a grant of preliminary injunction relief, a plaintiff must establish that it will likely prevail on the merits at trial." *W.E. Long Co. v. Holsum Baking Co.*, **307 Ark. 345**, 351, **820 S.W.2d 440**, 443 (1991) (citing *Smith v. American Trucking Ass'n*, **300 Ark. 594**, **781 S.W.2d 3** (1989)). The test for determining the likelihood of success is whether there is a reasonable probability of success in the litigation. *Custom Microsystems*, **344 Ark. 536**, **42 S.W.3d 453**. Such a showing " is a benchmark for issuing a preliminary injunction." *Id*. at 542, 42 S.W.3d at 457-58.

"Essential to the issuance of a temporary restraining order is a finding that a failure to issue it will result in irreparable harm to the applicant." *Kreutzer v Clark* 271 Ark. 243, at 244, **607 S.W.2d 670**, at 671 (citing Ark. R. Civ. P. 65) (1980).  Harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *Kreutzer*, **271 Ark. 243**, **607 S.W.2d 670**. Obviously, financial harm is not irreparable, as it can be adequately compensated by money damages. Furthermore, financial

concerns aside, the fact that "some inconvenience will be occasioned" by litigation in multiple courts is not sufficient reason to justify judicial restraint. *Standard Oil Co. of Louisiana v. Reddick*, **202 Ark. 393**, 396, **150 S.W.2d 612**, 614 (1941).

Arkansas Code Annotated § 16-115-101 provides: " Writ of mandamus" means an order of the circuit court granted upon the petition of an aggrieved party or the state when the public interest is affected, commanding an executive, judicial, or ministerial officer to perform an act or omit to do an act, the performance or omission of which is enjoined by law. Mandamus is an appropriate remedy when a public officer is called upon to do a plain and specific duty, which is required by law and which requires no exercise of discretion or official judgment. Clowers v. Lassiter, 2005, 213 S.W.3d 6, 363 Ark. 241. Mandamus is not writ of right but is within discretion of court, and party applying for it must show specific legal right and absence of any other adequate remedy. MacKintrush v. State, 1997, 959 S.W.2d 404, 60 Ark.App. 42, affirmed 978 S.W.2d 293, 334 Ark. 390. In fact, the party seeking writ of mandamus must show that he has no other adequate remedy. Jones v. Adkins, 1926, 170 Ark. 298, 280 S.W. 389; Barney v. City of Texarkana, 1932, 185 Ark. 1123, 51 S.W.2d 509.

The Plaintiff has not alleged that there is no adequate remedy at law and cannot make a showing that irreparable harm will result.   The Plaintiff is not entitled to a restraining based upon any cognizable cause of action.

D) <u>**THE    INITIATED    ORDINANCE    MUST    BE    VALID    PRIOR    TO    ENFORCEMENT**</u>

The Plaintiff has brought this cause of action regarding the initiated measure which was title Initiated Ordinance No 1-2016.   In paragraph 32 of the Complaint, the Plaintiff states:

32. The city clerk did, in a timely manner, verify the signatures on the petitions. The clerk declared that she found enough valid signatures to forward the petition to the Phillips County Election Commission (hereinafter PCEC) for further processing. The PCEC did, after consulting with the city clerk and petition sponsors, approve the ballot title and forward the appropriate information to the ballot printer for inclusion on the November 8, 2016 general election.

Arkansas Code Annotated Section 7-91-04 provides that a Petition for an ordinance, act, or amendment proposed by initiative shall be on substantially the following form:

INITIATIVE PETITION

_____

To the Honorable

_____

Secretary of State of the State of Arkansas, or County Clerk, or City Clerk

We, the undersigned registered voters of the State of Arkansas, or _____ County, Arkansas, or City of _____ , or Incorporated Town of _____ , Arkansas (as the case may be), respectfully propose the following amendment to the Constitution of the State or act or ordinance (as the case may be),

and by this, our petition, order that the same be submitted to the people of said state, or county, or municipality (as the case may be), to the end that the same may be adopted, enacted, or rejected by the vote of the registered voters of said (state, county, or municipality) at the regular general election to be held on the ___ day of ____, 20__, and each of us for himself or herself says:

I have personally signed this petition; I am a registered voter of the State of Arkansas, or
_____ County, Arkansas, or City of _____ , or Incorporated Town of _____ ,
Arkansas (as the case may be), and my printed name, date of birth, residence, city or town of
residence, and date of signing this petition are correctly written after my signature.

(Here insert popular name and ballot title of initiated measure.) (In the case of a proposed
initiated act or ordinance, insert the following: BE IT ENACTED BY THE PEOPLE OF THE
STATE OF ARKANSAS, OR _____ COUNTY,ARKANSAS, OR CITY OF _____ OR
INCORPORATED TOWN OF _____ , ARKANSAS (as the case may be)):

(Here insert full text of initiated measure.)"

(b)   The information provided by the person on the petition may be used as evidence of the
      validity or invalidity of the signature. However, if a signature of a registered voter on the
      petition is sufficient to verify the voter's name, then it shall not be adjudged invalid for
      failure to sign the name or write the residence and city or town of residence exactly as it
      appears on voter registration records, for failure to print the name in the space provided,
      for failure to provide the correct date of birth, nor for failure to provide the correct date of
      signing the petition, all the information being an aid to verification rather than a
      mandatory requirement to perfect the validity of the signature.

(c)   No additional sheets of voter signatures shall be attached to any petition unless the sheets
      contain the full language of the petition.

(d)
      (1)   The signature section of the petition shall be formatted and shall contain the
            number of signature lines prescribed by the Secretary of State.

      (2)   Before the circulation of a statewide petition for signatures, the sponsor shall file a
            printed petition part with the Secretary of State in the exact form that will be used
            for obtaining signatures.

The Plaintiff has filed copies of the Petition with his complaint and the Petition clearly is not

similar to the required language.  In addition, Arkansas Code Annotated Section 7-9-120

provides:

(a)   The Secretary of State shall cause every measure approved by the people to be printed
      with the general laws enacted by the next ensuing session of the General Assembly with
      the date of the Governor's proclamation declaring the same to have been approved by the
      people.

(b)  However, city ordinances approved by the people shall only be certified by the Secretary
of State to the city clerk or recorder of the municipality for which the ordinance has been
approved, who shall immediately record the same as he or she is required by law to record
other ordinances of the municipality.

The Plaintiff does not allege that the Initiated Ordinance petition was proper, nor does he

alleges that the Secretary of State has certified the Initiated Ordinance.  The Plaintiff glosses

over the requirements and merely states that the time to challenge the election has passed;

however, the issues is hand is whether the council was authorized to act and/or is still

authorized to act.  The City Council still possess the legislative authority to amend or repeal.

The Plaintiff is well aware of the City Council's authority to amendment and repeal

initiated measures.  So much so that the Plaintiff was an advocate to have the General

Assembly to pass an act limiting the authority to repeal and/or initiated measures.  Act 1052 of

the Arkansas General Assembly was passed 4/06/17 as a result of this matter and relates to

cities with a population under 15,000 residents. Act 1052 amends Arkansas Code Annotated

Section 14-55-202 and provides:

SECTION 1. Arkansas Code § 14-55-202 is amended to read as follows: 22 14-55-202.

Reading requirement.

(a) All bylaws and ordinances of a general or permanent nature shall be fully and distinctly

read on three (3) different days unless two-thirds (2/3) of the members composing the

municipal council shall dispense with the rule.

*(b) In a city with a population of less than fifteen thousand (15,000) persons in the most*

*recent federal decennial census, if the ordinance under consideration has been submitted to*

*and approved by the electors of the municipality and is being amended, repealed, or otherwise altered by the municipal council, then the ordinance shall be fully and distinctly read on three (3) different days not less than twenty-eight (28) days apart.* (Emphasis Added).

While this will cause the reading of an ordinance over an 84 day time frame prior the ordinance being amended or repealed, it still does not take the City Council's authority that is provided for in Amendment 7 to the Arkansas Constitution.  The City Council is vested with the authority to amend and repeal the initiated measure.  It is well-established in Arkansas that cities are "creatures of the State to aid it in the regulation and administration of local affairs." *City of Little Rock v. Raines,* 241 Ark. 1071, 411 S.W.2d 486 (1967).  They have no inherent powers, and can function only within limits fixed by law.  *Kitchens v. City of Paragould,* 191 Ark. 940, 88 S.W.2d 843 (1936).  They may act legally only within powers delegated by the Arkansas Constitution or statutes.  *Potocki v. City of Fort Smith*, 279 Ark. 19, 648 S.W.2d 462 (1983).  Here the City council has clearly been delegated the authority to amend and repeal initiated measures has have chosen to do so.

At this present moment, even after the Plaintiff has had legislation enacted, the City Council can amend and repeal the initiated ordinance.  Even if this Court rules that the ordinance repealing the initiated measure was in appropriate, the City Council can chose to amend the ordinance or repeal it.

The Plaintiff must also prove that this ordinance is general and/or permanent in nature prior to making a showing that it is required to be published.  The relevant statutes only require ordinances that are of a general and permanent nature to be published.

The City Council has caused the Ordinance 31-2016 to be published in the newspaper since the filing of this cause of action.  The public is well aware of the vote to repeal this initiated ordinance.  The same has been discussed on the Plaintiff's radio station several times and it has been reported in the local newspaper. The Plaintiff alleges that the time frame is not reasonable; however, reasonable in not define in any case law.  All Defendants disagree and affirmatively state that the time frame was reasonable.

Finally, the City Council has been charged and provide with the exclusive authority to handle redistricting matters.  More specifically,  Arkansas Code Annotated Section 14-43-311 provides:

14-43-311

(a)(1)(A)  City councils in cities of the fires class **shall have the authority** to redistrict the   wards in their city when **they determine that the people can best be served** by adding wards, combining wards, or changing ward boundary lines to equalize the population in the various wards.


(B)  It **shall be the duty of the council** to see that each ward has nearly an equal population as would best serve the interest of the people of the city.


(2)(A)  Within ninety (90) days after redistricting, if one hundred (100) or more qualified electors in the city are dissatisfied with the redistricting of the city into wards, they shall have authority to petition the circuit court.

(B)  The court, after due hearing, shall have authority to redistrict the city into such

wards  as the court shall deem best if the court finds that the redistricting action by the council

was arbitrary and capricious.

(b)  At the next city election held, more than twenty (20) days after the approval of

redistricted wards, there shall be elected from each of the new wards two (2) aldermen

who shall organize the new city council at the first council meeting in January after

their    election.

(c)(1)(A)  All aldermen elected in the city prior to redistricting of wards shall give up

their positions to the new aldermen at the time for the organization of the new council,

as      provided in the subsection (b) of this section.

(B)  From that date the terms of office of all previously elected aldermen shall cease

and     terminate.

(2)(A)  It shall be lawful to increase the number of wards or continue the same number

of      wards without affecting the terms of office incumbent aldermen of the city.

(B)(i)  When the wards are reapportioned so as to increase the number of wards or

readjust existing wards so that such wards contain nearly equal population, the

aldermen        who remain in their old ward, or part thereof, shall continue in office.

(ii)  New alderman shall be elected only for new wards actually formed out of the territory of old wards.

(d)(1)  All clerk's cost and other costs incurred in the proceedings authorized in this section shall be paid by the persons at whose instance the service were rendered.

(2)(A)  In case these proceedings result in the redistricting of the city into new wards, the compensation of those individuals making the redistricting shall be fixed by the circuit judge, certified to the city council, and paid out of the city treasury.

(B)  This compensation shall not exceed the sum of twenty-five ($25.00) each.

The Initiated ordinance is not valid as it is an unlawful delegation of authority of the city council to the sponsor of the committee.

WHEREFORE, PREMISES CONSIDERED, the Defendants pray for an order dismissing this case and for any and all other relief to which they are entitled.

RESPECTFULLY SUBMITTED,

CITY    OF    HELENA-WEST    HELENA, ARKANSAS,    AND    ALL    NAMED DEFENDANTS

By:  /s/ André K. Valley
André K. Valley, #96225
City Attorney
226 Perry Street
Helena-West Helena, AR 72342
(870) 817-7409        *phone*
(870) 817-7455        *facsimile*
andrevalley@gmail.com

attorney@helena-westhelena.us

## CERTIFICATE OF SERVICE

      I, André K. Valley, do hereby certify that July 7, 2017, I electronically filed this document with the Clerk of the Court using the CM/ECF system which shall send notification of such filing to the following:

James F. Valley
Attorney At Law
P O Box 451
Helena-West Helena, Arkansas 72342

                         By: /s/ André K. Valley
                         André K. Valley # 96225